IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARIO J. DIANA,                  :
    Plaintiff               :
                            : CIVIL ACTION NO. 3:05-CV-2338
    v.                      :
                            : (JUDGE CAPUTO)
WILLARD OLIPHANT,                :
CARMEN ALTAVILLA,                :
                            :
    Defendants               :


BRIEF IN SUPPORT OF DEFENDANTS' MOTION PURSUANT TO
FED. R. CIV. P. 50(b) FOR JUDGMENT AS A MATTER OF LAW
OR, ALTERNATIVELY, FOR A NEW TRIAL PURSUANT TO FED. R.
CIV. P. 59(a), OR FOR A REMITTITUR


BARBARA   A. CHRISTIE
CHIEF COUNSEL


BY:   JOANNA N. REYNOLDS
ASSISTANT COUNSEL
I.D. No. 37436

Pennsylvania State Police
Office of Chief Counsel
1800 Elmerton Avenue
Harrisburg, PA  17110
717-783-5568
717-772-2883 – Fax

DATED:  July 25, 2008

# TABLE OF CONTENTS

PROCEDURAL HISTORY/STATEMENT OF FACTS............................................1

STATEMENT OF THE ISSUES.......................................................................2

SUMMARY OF ARGUMENT .........................................................................3

ARGUMENT ...............................................................................................6

I.  JUDGEMENT AS A MATTER OF LAW SHOULD BE ENTERED IN FAVOR
    OF DEFENDANTS ON PLAINTIFF'S FOURTH AMENDMENT CLAIM AND
    FEDERAL AND STATE STATUTORY WIRETAP CLAIMS............................6

II.  A NEW TRIAL SHOULD BE GRANTED BECAUSE OF TRIAL ERRORS....21

III. IN THE ALTERNATIVE, THE DEFENDANTS ARE ENTITLED TO A
     REMITTITUR..............................................................................38

CONCLUSION ..........................................................................................46

## TABLE OF AUTHORITIES

### Cases

Amati v. City of Woodstock, 176 F. 3d 952 (7th Cir. 1999) .................................... 18

Anderson v. Creighton, 483 U.S. 635 (1987) .............................................................. 6

Blake v. Wright, 179 F. 3d 1003 (6th Cir. 1999) ..................................... 9, 10, 11, 34

Biton v. Menda, 812 F. Supp. 283 (D.P.R. 1993) ..................................................... 43

Boetger v. Miklich, 534 Pa. 581 (1993) ..................................................................... 30

Bolden v. SEPTA, 21 F.3d 29 (3d Cir. 1994) ............................................................ 42

Bush v. Rauch, 38 F. 3d 842 (6th Cir. 1994) .............................................................. 6

Crawford-El v. Britton, 523 U.S. 574 (1998) .............................................................. 7

DIRECTV v. Walsh, 540 F. Supp. 2d 553 (M.D. Pa. 2008) ..................................... 44

Evans v. Port Authority of New York and New Jersey, 273 F.3d 346 (3d Cir. 2001) .................................................................................................................................... 36

Farberware, Inc. v. Grobe, 1995 U.S. Dist. LEXIS 15409 (S.D.N.Y. 1995) .......... 43

Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336 (3d Cir. 2005) .................................................................................................................................... 35

Greene v. Reeves, 80 F. 3d 1101 (6th Cir. 1996) ....................................................... 7

Gumbs v. Pueblo Int'l, Inc., 823 F. 2d 768 (3d Cir. 1987) ...................................... 36

Hall v. Pennsylvania, 2006 WL 2772551 (M.D. Pa. 2006) ............................... 39, 40

Halperin v. Kissinger, 434 F. Supp. 1193 (D.D.C. 1977) ........................................ 45

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ................................................................. 6

Jacobsen v. Rose, 592 F.2d 515 (9th Cir. 1978) ...................................................... 43

Jandak v. Village of Brookfield, 520 F. Supp. 815 (N.D. Ill. 1981) ........................ 19

Jeffers v. United States, 432 U.S. 137 (1977) ........................................................... 32

Kazan v. Wolinksi, 721 F.2d 911 (3d Cir. 1983)........................................................ 39

Klein v. Hollings, 992 F. 2d 1285 (3d Cir. 1993) .................................................... 25

Saucier v. Katz, 533 U.S. 194 (2001) .......................................................................... 7

Scott v. Donald, 165 U.S. 58 (1897) .......................................................................... 45

Spence v. Board of Education, 806 F.2d 1198 (3d Cir. 1986) ...................38, 41, 42

Tapley v. Collins, 211 F. 3d 1210 (11th Cir. 2000) ................................................. 10

United States v. Riggi, 951 F.2d 1368 (3d Cir. 1991) ............................................. 24

Walters v. Mintec/Int'l, 758 F.2d 73 (3d Cir. 1985) ................................................. 42

Wilson v. Layne, 526 U.S. 603 (1999) ........................................................................ 6

## Statutes

Omnibus Control and Safe Streets Act, 18 U.S.C. § 2510...........................*passim*

Omnibus Control and Safe Streets Act, 18 U.S.C. § 2511.................................. 26

Federal Wiretapping Act, 18 U.S.C. § 2520 ........................................... 25, 42, 43

18 PA. CONS. STAT. § 5704............................................................................*passim*

18 PA. CONS. STAT. § 5747............................................................... 26, 38, 43, 44

## PROCEDURAL HISTORY/STATEMENT OF FACTS

This Court, having presided over the trial of this case, is familiar with the facts and procedural history of this matter.  Therefore, for the sake of efficiency, the relevant facts and procedural history will be discussed as appropriate in the arguments below rather than in a separate preliminary section.

<u>STATEMENT OF THE ISSUES</u>

I.    WHETHER JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED IN FAVOR OF DEFENDANTS ON PLAINTIFF'S FOURTH AMENDMENT CONSTITUTIONAL CLAIM AND FEDERAL AND STATE STATUTORY CLAIMS?


II.    WHETHER A NEW TRIAL SHOULD BE GRANTED BECAUSE OF TRIAL ERRORS AND BECAUSE THE VERDICT WAS A RESULT OF PASSION OR PREJUDICE ON THE PART OF THE JURY?


III    WHETHER THE DAMAGES AWARDED WERE TOO LARGE, REQUIRING A REMITTITUR?

SUMMARY OF ARGUMENT

Judgment as a matter of law should be entered in favor of defendants on the Fourth Amendment and federal and statue statutory wiretapping claims. With respect to the Fourth Amendment and federal wiretapping claim, the defendants are entitled to the defense of qualified immunity since the alleged constitutional violations were not clearly established at the time of the alleged violations. Because the federal statute on wiretapping contains an exception for law enforcement officers acting in the ordinary course of their duties, the officers would have reasonably believed that they could record a business call about a work-related matter, between a police supervisor and his subordinate. Reasonable officers in the positions of defendants Altavilla and Oliphant would not have known they were violating clearly established law, since they were following federal statutory law. Moreover, the defendants are entitled to judgment as a matter of law because they met the requirements for the exceptions to the general prohibitions of interception of telephone communications, contained in both the state and federal wiretapping laws, found at 18 Pa. C.S. § 5704 (3) and 18 U.S.C. § 2510 (5)(a)(ii).

3

Alternatively, this court should grant a new trial due to many trial errors. The Court did not allow re-cross examination of the plaintiff on a critical issue that was introduced at the first time at trial, thereby requiring a new trial. Another reason that a new trial should be granted is because the defense was not permitted to cross-examine the plaintiff about a former bad act that impacted directly on his character and truthfulness. Since the jury obviously relied on the credibility of the plaintiff in reaching its decision, this prejudiced the defendants. Additionally, the court refused to charge the jury on the good faith defenses available to the defendants under both the federal and state wiretapping statutes. Such a refusal warrants a new trial, since the jury could not consider these defenses in their deliberations. Furthermore, a new trial is warranted because the court did not define "administrative purposes" under 18 Pa. C.S. § 5704, improperly leaving the meaning to the jury, who may have interpreted it more narrowly than was intended by the legislature, thereby prejudicing the defendants. Another reason a new trial should be granted is that the court improperly instructed the jury on the plaintiff's Fourth Amendment and federal statutory claims, misstating the applicable law, and thereby affecting substantial rights of the

4

defendants.    Finally, a new trial should be granted because the verdict was the result of passion or prejudice.

In the alternative, even if the Court does not agree that a new trial is warranted, the damage award itself should be reduced because it is not rationally based on the evidence.    Moreover, damages assessed by the Court against the defendants under the federal act were based on individual liability, when liability is joint, and therefore the federal statutory award should be reduced to one $10,000 award.    Also, the court, rather than the jury, should have assessed damages under the Pa. statute, since the Pa. Wiretapping and Electronic Surveillance Control Act specifically mandates that the court assess damages under 18 Pa. C.S. § 5747 (c).    Therefore, the jury award with respect to the alleged state statutory violation should be eliminated.    Finally, there was no evidence introduced of wantonness, recklessness, or maliciousness on the part of the defendants to justify a punitive award on this case.    Therefore, the punitive award should be negated.

**I.    JUDGMENT AS A MATTER OF LAW SHOULD BE ENTERED IN FAVOR OF DEFENDANTS ON PLAINTIFF'S FOURTH AMENDMENT CONSTITUTIONAL CLAIM, FEDERAL STATUTORY WIRETAPPING CLAIM, AND STATE STATUTORY WIRETAPPING CLAIM.**

A.    Defendants are Entitled to Judgment as a Matter Of Law on the Basis of Qualified Immunity with Respect to the Fourth Amendment Claim and the Federal Statutory Wiretapping Claim.

Qualified immunity is an affirmative defense that extends to government officials performing discretionary functions. Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). Under this judicially-created exception, government officials are immune from civil liability when acting in their official capacities if their actions do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, see also Anderson v. Creighton, 483 U.S. 635, 639 (1987)

In order to determine whether qualified immunity applies, the court must examine first, whether the alleged constitutional violations were "clearly established" at the time of the alleged violations. A right is clearly established if there is binding precedent from the Supreme Court, or the Third Circuit. See Wilson v. Layne, 526 U.S. 603, 615-618 (1999); see also Bush v. Rauch, 38 F. 3d 842, 847 (6th Cir. 1994)

6

Once it is determined that the right is clearly established, the court must then decide whether a reasonable person in the defendants' position would have known that his or her actions violated clearly established rights.    Saucier v. Katz, 533 U.S. 194, 202 (2001); see also Greene v. Reeves, 80 F. 3d 1101, 1104 (6th Cir. 1996).    Such a test reflects an objective standard, making the official's subjective intent irrelevant.    Crawford-El v. Britton, 523 U.S. 574 (1998).

Applying these constitutional standards to this case, the court must first examine whether the defendants are entitled to qualified immunity under the Fourth Amendment because the law was not "clearly established" that the Plaintiff had a reasonable expectation of privacy in a phone call that originated from a State Police phone that was recorded.  The defendants Altavilla and Oliphant acknowledge that at the time Altavilla ordered Oliphant to make the call, and when Oliphant placed a call to the plaintiff on a recorded line, a clearly established rule existed that they could not intercept private telephone communications without first obtaining a warrant, absent some exception to the warrant requirement.

However, there is an exception to the warrant requirement that is contained in Title III of the Omnibus Control and Safe Streets Act, 18 U.S.C. § 2510, et seq., at section 2510(5)(a)(iii), which allows recordings to be made of telephone conversations, as long as the recording is being made "by an investigative or law enforcement officer in the ordinary course of his duties."  Based on this exception, defendants Oliphant and Altavilla maintain that they did not violate a clearly established constitutional right.

Both Captain Altavilla and Oliphant testified that the act of ordering a subordinate to call a trooper on a recorded line and the act of calling a trooper on a recorded line, respectively, were in the course of their duties. (See Tr. #3[1], pp. 228-230; Tr. #2, pp. 177-182) Even the plaintiff admitted on cross-examination that Oliphant was carrying out a State Police duty when he made the phone call to the plaintiff. (Tr. #2, p. 133)  The plaintiff also testified that he himself had talked to troopers on recorded lines regarding employment matters, such as calling off sick or calling members to cover shifts. (Tr. #2, pp. 121-122)

---

[1] References to the transcripts of the trial of this case are as follows:  Tr #1 refer to the transcripts of testimony from Monday, April 7, 2008.  Tr. #2 refers to the transcript of testimony from Tuesday, April 8, 2008; Tr. #3 refer to the transcript of testimony from Wednesday, April 9, 2008; and Tr. #4 refers to the transcript of testimony from Thursday, April 10, 2008.

Since the defendants would reasonably have believed that their actions were in the ordinary course of their duties (*i.e.* that they could record a business call about a work-related matter between a police supervisor and a police subordinate), "reasonable officers" in the position of Altavilla and Oliphant would not have known they were violating clearly established law, since they were following federal statutory law.   Therefore, they are entitled to the defense of qualified immunity.

In <u>Blake v. Wright</u>, 179 F. 3d 1003 (6th Cir. 1999), the 6th Circuit Court of Appeals held that a police chief was entitled to qualified immunity for recording personal and business calls on recorded police lines, under the Fourth Amendment and Title III.  The facts in <u>Blake</u> are much more egregious than this case.  In <u>Blake</u>, there was no audible tone to alert the callers that their conversations were recorded; in this case, defendant Oliphant testified that there was a beep on the line (Tr. #2, p. 165), and the recording of the subject telephone call (introduced into evidence as Exhibit #D1-A), had distinct audible beeps on the line.   In <u>Blake</u>, the calls being recorded included personal calls; here, the only call at issue was one made in the course of State Police business, from one employee to another

about a work-related matter.  Finally, there was no notice to the plaintiffs in <u>Blake</u> that their personal calls were recorded; here, the plaintiff testified that he was familiar with the fact that the State Police often did business on recorded lines.

Moreover, in addition to the 6th Circuit, another circuit has held that the defense of qualified immunity is available to public officials who are sued under the Federal Wiretap Act.  <u>Tapley v. Collins</u>, 211 F. 3d 1210 (11th Cir. 2000).    In <u>Tapley</u>, the District Court denied the defendants' motion for summary judgment, based upon the defense of qualified immunity, concluding that defense was unavailable to a claim under the federal statute.  On appeal, the 11th Circuit ruled, like the 6th Circuit in <u>Blake</u>, that qualified immunity was a defense to a suit brought under the Federal Wiretap Act, and remanded the case for consideration of the defense.  <u>Id</u>., 211 F. 3d at 1216-17.

In this case, the court considered the defense of qualified immunity under the Fourth Amendment, but determined that the defendants were not entitled to it, without explanation.  In the matter of the federal statutory claim, the court rejected the proffered defense out-of-hand, indicating the defense was not available under the

federal act.  (See Defendants' Motion for Judgment as a Matter of Law, filed April 8, 2008; Tr. #3, pp. 9-12, 26-32, 39-40, 260-263)

Under the reasoning of <u>Blake v. Wright</u>, the court should have considered the defense of qualified immunity and ruled that the defendants were entitled to it, under both the Fourth Amendment, and Title III, since the alleged constitutional violations were not clearly established at the time, and reasonable persons in the defendants' positions would not have known that their actions violated clearly established rights.

B.    Defendants are Entitled to Judgment as a Matter of Law with Respect to the State Statutory Wiretapping Claim on the Basis that their Actions Fell Within an Exception to the Pennsylvania. Wiretapping Statute.

Pursuant to 18 Pa. C.S. § 5704 (3), it is <u>not</u> <u>unlawful</u> for "police …communications systems to record telephone communications coming into and going out of the communications system of … a police department …" if the system meets the following criteria:

"(i) the telephones thereof are limited to the exclusive use of the communication system for administrative purposes and provided the communication system employs a periodic warning which indicates to the parties to the conversation that the call is being recorded;
(ii) all recordings made pursuant to this clause, all notes made therefrom, and all transcriptions thereof may

be destroyed at any time, unless required with regard to a pending matter; and

（iii) at least one nonrecorded telephone line is made available for public use at the Pennsylvania Emergency Management Agency and at each police department, fire department or county emergency center."

In this case, the defendants produced overwhelming evidence that they met the three criteria to qualify for an exception to the general prohibition of interception of telephone communications. Therefore they are entitled to judgment as a matter of law with respect to the claim under the Pennsylvania Wiretapping and Electronic Surveillance Control Act.

First, the telephone that recorded the phone call between defendant Oliphant and plaintiff Diana was limited to "the exclusive use of the communication system for administrative purposes." 18 Pa. C.S. § 5704 (3)(i)   The term "administrative", modifying "purposes" is not defined in the statute and was not defined by the court in this case. (Tr. #4, p. 112) Therefore, the word "administrative" (from the point of view of the defendants) can be given its everyday meaning, which according to Websters New Collegiate Dictionary (5th ed., 1977) is "of or relating to management, or the execution of public affairs; executive."   Under this definition, the phone call made by then-Lt. Oliphant, for the purpose of relaying information to Tpr. Diana

about his work status, was made for an "administrative" purpose. Moreover, as Oliphant and Altavilla testified, the recorded phones were used for the purpose of carrying out the business of the police department. (Tr. #2, pp. 177-178, 183-184; 228-229)

The other provision of section (i) of the exception that must be met is that the telephone system employ "a periodic warning which indicates to the parties to the conversation that the call is being recorded." 18 Pa. C.S. § 5704 (3)(i). The overwhelming evidence in this case is that the telephone on which defendant Oliphant had the conversation with Tpr. Diana employed a periodic warning beep. This evidence consisted of the following:  1) the tape of the conversation itself, introduced into evidence as Defendants' Exhibit #D1-A, which contained clear periodic audible beeps (Tr. #2, p. 246), 2) defendant Oliphant's testimony that he called the plaintiff on a recorded line that utilized periodic beeps (Tr. #2, p. 165),  3) Paul Ginsberg's (the defendants' expert) testimony that the tape he examined – the same one introduced at trial as #D1-A – was an authentic recording of a conversation between two individuals, that it had not been tampered with, and that it had automatically inserted beeps consistent with the beep tone generator utilized by the

Pennsylvania State Police on their recorded phones, (Tr. #3, pp. 64-68) and  4) Tpr. Ron Zukosky 's testimony that the phone line from which he made the Maxell recording, identified as #D1-A, was a recorded beeped line (Tr. #2, p. 222), he had no reason to believe the recording or the TLP-107 unit had been tampered with (Tr. #2, p. 223, 235), and he knew of no way to keep the audible beep on one end of the recorded call and delete or mute  it on the other. (Tr. #2, p. 236) (Zukosky was the Troop Communications Specialist, and he was responsible for troop communications, including the telephones. (See Tr. #2, pp. 203-204))  Zukosky also testified that he knew of no-one else at Troop P, Wyoming, other than himself, who would know anything about the technical aspects of the telephone system used there. (Tr. #2, pp. 206-207.)

The only evidence offered by the plaintiff to suggest that the beeps could not have been heard by the plaintiff was:   1) the plaintiff's own self-serving testimony that he did not hear any beeps (Tr. #2, p. 96), and that one of the plugs from the "beep box" could be disconnected, so that the beeps could still transmit to the State Police end of the conversation, but not on the receiving end (Tr. #2, p. 144), and  2) testimony from Cpl. Williams, who said he did not hear any

beeps on the recording of the call when he heard a short portion of the original recording when Zukosky was making the copy of the recording. (Tr. #2, p. 9)

There are multiple problems with the plaintiff's evidence:  1) Cpl. Williams' testimony is not consistent with the plaintiff's testimony and theory that Oliphant somehow unplugged the device that made the beeps on one part of the line, rendering it operative on Oliphant's end of the line, but not on the plaintiff's end.  Under the plaintiff's theory, Cpl. Williams should have heard beeps because the beeps would have been present on the Pennsylvania State Police end of the line.  2) The court did not allow the defense to re-cross the plaintiff on his theory that the beep box could be disconnected as to one end of the line. (Tr. #2, p. 149)  Had it been permitted to do so, the defense would have asked critical questions, such as Diana's familiarity with the TLP-107 and if he ever tested out his theory that one end of the line could be disconnected, as well as other relevant questions.  3) Tpr. Diana was permitted to give an expert opinion about the operation of the TLP-107 when he clearly had no expertise to do so. (He testified that his only familiarly with the equipment was based on incidents when repairmen came to fix it. (Tr. #2, p. 123))

The evidence offered by the plaintiff should be disregarded because there was <u>no</u> evidence presented that the recording (the best evidence of what occurred during the conversation between Oliphant and Diana) had been tampered with, that Oliphant or Altavilla had motive or opportunity or enough knowledge to tamper with the recording or the equipment that produced the beeps, or that Diana had enough knowledge of the TLP-107 to know how it worked.

The second part of the exception in § 5704 that must be met here is that the recordings made pursuant to the exception may be destroyed at any time, unless required with regard to a pending matter. 18 Pa. C.S. § 5704 (3)(ii)  Here, the original recording made on the Seltronics recorder was not preserved, because at the time, there was no matter pending, and the only request for the recording indicated that a copy was appropriate. (Tr. #3, pp. 224-227)  A copy of the recording was sent to the individual who requested it, for a workers' compensation case. (Tr. #3, pp. 225-226)  Since Pennsylvania State Police regulations allow destruction of the original recording after 60 days (Exhibit #D-2, p. 20), and since no matter was pending at the time of destruction that would have required the retention of the original, the copying of the original, and the

subsequent destruction of the original digital recording was lawful under the Act.  (Tr. #2, pp. 216-217)

The third part of the exception in § 5704 requires that police maintain at least one non-recorded telephone line for public use.  18 Pa. C.S. § 5704 (3)(iii).  This element was not at issue in this case, but there was testimony that there were unrecorded lines available at Troop P, Wyoming, when the phone call was made. (Tr. #1, p. 91; Tr. #2, p. 205, 210)

Since the overwhelming evidence was that the defendants met the requirements of the exception to the general prohibition of interception and disclosure of telephone communications, contained in the Pennsylvania Wiretapping and Electronic Surveillance Control Act, the defendants are entitled to judgment in their favor on that issue.


C.    Defendants are Entitled to Judgment as a Matter of Law with Respect to the Federal Statutory Wiretapping Claim on the Basis that their Actions Fell Within an Exception to the Federal Wiretapping Statute.

Under the provisions of 18 U.S.C. § 2510 (5)(a)(ii), it is not unlawful under federal law for a telephone conversation to be intercepted (i.e. recorded) if the intercepting device is used:

> "…by a provider of wire or electronic communication service in the ordinary course of its business, or <u>by an investigative or law enforcement officer in the ordinary course of his duties…</u>"    [emphasis added]

In this case, the defendants produced substantial evidence that they met the criteria to qualify for an exception to the general prohibition of interception of telephone communications.  Therefore, they are entitled to judgment as a matter of law with respect to the claim under Title III of the Omnibus Control and Safe Streets Act, 18 U.S.C. § 2510, et seq.

Plaintiff alleged that the defendants violated the federal wiretapping statute by calling the plaintiffs on a recorded telephone line without audible beeps.  Beeps are not required under § 2510, so long as the recording is being made "by an investigative or law enforcement officer in the ordinary course of his duties."  18 U.S.C. § 2510 (5)(a)(ii).  Moreover, several courts have recognized that it is routine and a standard police practice for all calls to and from the police to be recorded.  See <u>Amati v. City of Woodstock</u>, 176 F. 3d

952, 954 (7th Cir. 1999); <u>Jandak v. Village of Brookfield</u>, 520 F. Supp. 815, 821-25 (N.D. Ill 1981).

The evidence presented by both the plaintiff and the defendants overwhelmingly establishes that the call to Tpr. Diana was placed and recorded in the ordinary course of law enforcement duties.  Oliphant testified that he made the call from a recorded line at State Police Troop P headquarters.  (Tr. #2, p. 165)  The call was placed to Tpr. Diana for a work-related purpose, i.e. to inform him that he was subject to a back-to-work order and to explain his options. (Tr. #2, p. 165)  Communicating orders and discussing police business matters on recorded lines is a routine and ordinary practice in the Pennsylvania State Police.  (Tr. #2, p. 177, 179-181, 183-184; Tr. #3, pp. 177-179, 181; Tr. #3, pp. 228-230)  In fact, the plaintiff himself admitted that Oliphant was carrying out a State Policy duty when he made the phone call to the plaintiff.  (Tr. #2, p. 133)

Since the overwhelming evidence was that the defendants met the requirements of the law enforcement exception to the general prohibition of interception of telephone communications, contained in Title III of the Omnibus Control and Safe Streets Act, 18 U.S.C. §§

2510, et seq., the defendants are entitled to judgment in their favor on

that issue.

## II.   A NEW TRIAL SHOULD BE GRANTED BECAUSE OF TRIAL ERRORS

Defendants are requesting a new trial in this case because the court did not allow re-cross examination of the plaintiff on a critical issue that was introduced for the first time at trial; the court did not allow cross-examination of the plaintiff on a former bad act of the plaintiff which would have impacted on his credibility;  the court refused to charge the jury on the good faith defenses available to the defendants under both the federal and state wiretapping statutes; the court did not define "administrative purposes" under 18 Pa. C.S. § 5704, improperly leaving the meaning of the phrase to the jury to decide; the court improperly instructed the jury on the plaintiff's Fourth and federal statutory claims; and the verdict was clearly the result of passion or prejudice.


A.   A New Trial Should Be Granted Because The Court Did Not Allow Re-Cross Examination Of The Plaintiff On An Issue Critical To The Defendants' Case.

On the second day of trial, on re-direct examination, after the plaintiff essentially admitted on cross-examination that the only knowledge that he had that the TLP-107 actually existed, was

because someone came to repair it, when he was working desk, the

following exchange occurred:

> "Q [Mr. Goldhaber] – Now, to your knowledge
> what happens if you just remove that one plug
> from the beep box?
> A [Plaintiff] – There's two plugs.   If you
> remove one or either one, I'm not sure if it
> matters, the beep would still transmit to
> the…our end…to the state police end but not
> to the citizen's end
> Q [Mr. Goldhaber] – So the caller…the person
> on the other end of the phone wouldn't know
> there was a beep there?
> A [Plainitff] – Correct."                    (Tr. #2, pp. 144-145)

This exchange was critical, because it is the only evidence

offered at trial that an audible beep on a recorded line could be

removed at one end of the line, but not the other.   (Other testimony

was offered, by one of the defense witnesses, Tpr. Ron Zukosky, that

if the TLP-107 were unplugged, it would remove the beeps across the

line and that there was no way to disconnect the listener's portion, as

far as the beeps were concerned (Tr. #2, pp. 235-236.))     After the

exchange between the plaintiff and his counsel occurred, plaintiff's

counsel finished re-direct and the court questioned plaintiff briefly.

The following exchange then occurred:

> "THE COURT:   That's all.   You can ask
> questions about what I just asked.
> MR. GOLDHABER:  No questions.

22

> MS. REYNOLDS:  I have some questions
> based on what he asked for recross.
> THE COURT:  No recross.  You can ask
> about what I just asked about."  (Tr. #2, p. 149)

This limitation on re-direct caused a huge evidentiary problem

for defendants.  Defendants were not permitted to cross the plaintiff

on how he gained his information about the TLP-107 (the device that

produces the beep on a recorded line), nor were they allowed to

explore if the plaintiff had done any experiments on the device, or had

any basis on which to make his assertion that the beeps on one end

of the line could be removed.  This limitation by the court substantially

affected the rights of the defendants because it could have created in

the mind of the jury an improper conclusion that the beep on the line

could actually easily be tampered with, so that Diana's end of the line

would not contain the intermittent beep heard on the tape, an

unsupported lay conclusion which the defendants contest and which

was contradicted by evidence produced by the defendants, and about

which the defendants would have extensively cross-examined the

plaintiff.  The 3rd Circuit has held that a court errs in imposing a

blanket prohibition on re-cross examination, when new information is

elicited on re-direct examination, as was the case here.  <u>United</u>

States v. Riggi, 951 F. 2d 1368 (3rd Cir. 1991), reh. en banc. den.,

1992 U.S. App. LEXIS 1985 (3rd Cir. 1992)


B.    A New Trial Should be Granted Because the Court did not
Allow Cross-Examination of the Plaintiff on a Specific Instance of
Conduct Concerning the Plaintiff's Character for Truthfulness.

Approximately two years before the events involved in this

case, while Tpr. Diana and Cpl. Joe Walsh were on a private skiing

trip, Tpr. Diana became injured and asked Cpl. Walsh if he (Walsh)

would say that Diana got hurt on Pennsylvania State Police duty so

Diana could fraudulently get disability benefits from his employer. (Tr.

#2, pp. 134-135)  The defendants tried to cross-examine the plaintiff

on this matter as a specific instance of the plaintiff's character for

untruthfulness, and the plaintiff objected.

After a sidebar discussion, the court disallowed the defendants'

inquiry into this matter concerning the plaintiff's character for

truthfulness.  It appears from the record it was disallowed because

the defendants had not disclosed it previously to the plaintiff, even

though the provisions of F.R.E. 608 do not provide for or require prior

disclosure before the matter can be raised at trial. (Tr. #2, pp. 135-

139)

Although the court has broad discretion on evidentiary rulings such as this (See <u>Klein v. Hollings</u>, 992 F. 2d 1285 (3rd Cir. 1993)), in this instance the defendants believe a new trial should be granted when it is apparent that the verdict rested in large part on the credibility of the plaintiff, and the defendants should have been allowed the latitude to explore prior acts of the plaintiff that were particularly indicative of untruthfulness.  This is especially so in this instance where the prior instance of untruthfulness involved the same employer and the same subject matter. (*i.e.* a workmens' compensation claim.)

C.    A New Trial Should be Granted Because the Court Refused to Charge the Jury on the Good Faith Defense Available to the Defendants Under both the Federal and State Wiretapping Statutes.

18 U.S.C. § 2520 of the Federal Wiretapping Act provides for a complete defense against any civil or criminal action brought under the Act if the defendant has a good faith reliance on:

> "(1) a court warrant or order, a grand jury subpoena, a legislative authorization, or <u>a statutory authorization</u>;
> (2) …
> (3) …"                                    [emphasis added]

25

The defendants maintain that they were in good faith relying on the provisions of a statutory authorization that permitted them to record telephone communications while in the ordinary course of their duties.   That statutory authorization is 18 U.S.C. § 2510 (5)(a)(ii), read in conjunction with 18 U.S.C. § 2511.

The defendants believe that they pled this defense sufficiently in the "Third Defense" to their Answer, which states that:

> "The facts of this case fall into one or more exceptions to liability found in the federal and state wiretap statutes…"

Similarly, the defendants relied on the good faith provisions of the state wiretapping statute, at 18 Pa. C.S. § 5747 (d), which provide that:

> "A good faith reliance on:
> (1)A court or order, a grand jury subpoena, a legislative authorization, or a statutory authorization…
> (2) …
> (3) …
> is a complete defense to any civil or criminal action brought under this subchapter or any other law." [emphasis added]

The defendants maintain that they were in good faith relying on the provisions of the statutory authorization that allowed recording of telephones coming into and going out of a police department

provided the phones were used for administrative purposes; there was a periodic warning beep on the phone; all recordings could be destroyed, except when required for a pending matter; and a non-recorded line was available to the public.  See 18 Pa. C.S. § 5704 (3)

Again, the defendants pled this defense in its Answer, under the Third Defense.

The defendants asked the court, at the charging conference, to read an instruction to the jury informing them of the good faith defense under both the federal and state acts. (Tr. #4, pp. 18-19, 22-28)  The court, after deliberation, refused to charge on the good faith defense, on the basis that the court did not know what statutory provisions the defendants were relying upon. (Tr. #4, p. 44)

The defendants believe a new trial is warranted on the basis of the court's failure to give the good faith defense instruction for both defendants under both the federal and state statutory frameworks. During the discussion about the good faith defense during the charge conference, defense counsel made several references to the federal and state statutory provisions the defendants were relying upon for the defense.  The court understood that the statutory authorization for the federal good faith defense was that the defendants were acting in

the ordinary course of police duties, under 18 U.S.C. § 2510 (5)(a)(ii), since he spoke about the language of that section during the discussion of the defense. (Tr. #4, p. 18, 20-21)  The Court also knew that the provision the defendants were relying upon as the statutory authorization for the good faith defense under the Pennsylvania statute was 18 Pa.C.S. § 5704 (3), because of the context of the discussion concerning "administrative purposes." (Tr. #4, p. 22-28)

In addition to the discussion at the charge conference about the charge on the good faith defense, there was also extensive testimony that demonstrated that defendants met the factual requirements to have the defense presented to the jury under both statutes.  With respect to the issue of whether the recording was done "in the ordinary course of his duties", Oliphant testified that he believed after speaking to his supervisor, Captain Altavilla, that it was his obligation to call Tpr. Diana on a taped line and advise Tpr. Diana that his return to work order still stood.   (Tr. #2, pp. 163-165)   Advising a subordinate of their work obligations is "the ordinary course of duties" for a police supervisor.  Lt. Oliphant also testified that he has used recorded lines in the past to deliver business messages to state troopers (Tr. #2, p. 177); again, indicating how "ordinary" this process

was. (Tr. #2, pp. 183-184)  He said that he made phone calls on tape-recorded lines as a routine part of police business (Tr. #2, p. 178), and other troopers did the same. (Tr. #2, pp. 179-180)  Oliphant also testified that he did not believe he did anything wrong or improper when he called Tpr. Diana on the recorded line (Tr. #2, p. 178), which, again, is indicative of someone relying on the provisions of the statute.  (*i.e.* Oliphant in good faith thought he was making a recorded phone call in the ordinary course of police business under the meaning of 18 U.S.C. § 2510 (5)(a)(ii).)  Finally, Oliphant testified that he was following Captain Altavilla's order to call Tpr. Diana, and that following orders is a normal part of a police officer's duties. (Tr. #2, p. 181)

Captain Altavilla, too, testified that the order he gave then-Lt. Oliphant to call Tpr. Diana on a recorded line was done in the ordinary course of police business.  He testified that he believed he could use the taped communications lines at Pennsylvania State Police barracks, "as long as it was police-related." (Tr. #3, pp. 228-229) He believed that as long as it involved "an administrative police matter", or "police business", the conversation could be accomplished on recorded lines. (Tr. #3, pp. 228-229)  Altavilla also opined that

other troopers, commanders, and supervisors used the taped phones in the same manner he did, for business-related reasons. (Tr. #3, p. 230)

All of the above-referenced testimony from both Oliphant and Altavilla also establishes that the defendants were not only relying on the "ordinary course of business" language in the federal statute, but that they both believed the phone call to Tpr. Diana was made for "administrative purposes" under the Pennsylvania Statute. (see particularly the use of the term "administrative police matters," utilized by Captain Altavilla (Tr. #3, p. 228))     Therefore, both defendants believed when the phone call was made to Tpr. Diana about a work-related matter on a recorded line, that their actions were legal and permissible under both the federal and state statutes on wiretapping. Therefore, both were entitled to have the good-faith defense presented to the jury for consideration.  See Boetger v. Miklich, 534 Pa. 581 (1993) (The good faith defense is available when the defendant relies upon the specific provisions of the Pennsylvania Wiretap Act.)

D.    A New Trial Should be Granted Because the Court did not Define "Administrative Purposes", as that Term is Used in 18 Pa C.S. § 5704 (3), in Charging the Jury.

In the charge conference there was a discussion of what the term "administrative purposes" meant in the context of the defense outlined in 18 Pa. C.S. § 5704 (3).  (Tr. #4, pp. 23-28)  The defense was obviously concerned about the effect it would have on the case if the jury were left to determine what that term meant, since the jury's interpretation and the police officer's interpretation could differ.

The court in its charge defined the meaning of "ordinary", utilized in the phrase "ordinary course of … duties", in explaining the exception defendants relied upon in the federal statute, 18 U.S.C. § 2510 (5)(a)(ii).  However, despite the fact that there was ample evidence from the charge conference that defendants believed the jury could misinterpret the meaning of "administrative purposes" under the Pa. Act, at 18 Pa. C.S. § 5704 (3), the court gave no instruction on the term "administrative purposes."  This failure on the part of the Court left the term to be defined by the jury, and they could have chosen to define the term much more narrowly than the defendants did.  (*e.g.* The jury could have concluded that "administrative purposes" was restricted to publicly recognizable

police activity such as investigating crimes, but did not include personnel matters.)

It is true that a trial court need not define specific statutory terms unless they are outside the common understanding of a juror. See Jeffers v. United States, 432 U.S. 137 (1977).    However, because a jury might not understand for what "administrative purposes" a telephone could be utilized, from a police officer's perspective, the term should have been defined in this case, since the statutory exception in which the phrase in contained is directed to the police.

Because the term "administrative purposes" was not defined, and because a jury would not know what a police officer's administrative duties would include, the court should grant the defendants a new trial based on the fact that the failure to instruct on the meaning of the term could have resulted in a miscarriage of justice.

    E.    A New Trial Should be Granted Because the Court Did not Properly Instruct the Jury with Respect to the Fourth Amendment and the Federal Statute, Since the Court Instructed That the Jury Could Only Find for the Defendants if there were Beep Tones on the Phone Line, which is Inconsistent with the Federal Statutory Exception Defendants Relied Upon.

At trial, the Court, in instructing the jury on the Fourth Amendment claim, stated the following:

> "In this case if you find that there were beep tones on the telephone during the telephone call made by Captain Oliphant to Corporal Diana, you must find for the defendants.  If on the other hand you find that there were not any beep tones on the phone line during the time of the telephone call between Captain Oliphant and Corporal Diana, you must find for Corporal Diana."    (Tr. #4, p. 107)

Similarly, the Court instructed the jury as follows, with respect to the federal wiretapping claim:

> "Thus, if Corporal Diana did not exhibit a subjective or objective reasonable expectation privacy in this phone call, the call docs not fall within the definition of an oral communication and you must find for the defendants.  If you find that Corporal – if you find that beeps existed on the telephone line, then were was no reasonable expectation of privacy and you must also find for the defendants.   If there were no beeps on the line at the time of the call then of course you must find for Corporal Diana."                    (Tr. #4, p. 110)

During the charge conference with respect to the proposed instructions, counsel for defendants objected to the proposed instructions, in that federal law and the U.S. Constitution did not

require that beeps be on a police line for it to be recorded.  (Tr. #4, pp. 17-18)

The problem with the Court's instruction is that it severely prejudiced defendants.  If the jury believed there were no beeps on the line, they had to find for the plaintiff, even though the exception to the federal wiretapping law, found at 18 U.S.C. § 2510 (5)(a)(ii), allowed the defendants to record phone calls in the ordinary course of police business, and does not mention the presence or absence of beeps.  Because the defendants relied on the provisions of federal law, when they recorded the phone call, the instruction should not have mentioned the beeps at all, with respect to the Fourth Amendment or the federal statute, since the police had a federally recognized right to record a phone call if the call was made in the ordinary course of police duties.  See Blake v. Wright, 179 F.3d 1003 (6th Cir. 1999)

Since the instructions misstated the applicable law, and affected substantial rights of the defendants, the defendants should be granted a new trial.  See Franklin Prescriptions, Inc. v. New York Times Co., 424 F. 3d 336 (3rd Cir. 2005).

   F.    A New Trial Should be Granted Because the Verdict Was
Clearly the Result of Passion or Prejudice.

   The jury awarded damages to Diana in the amount of
$501,004, $262,126 of which was compensatory, and $238,878 of
which was punitive.  The evidence in this case on damages, supplied
solely by the plaintiff's testimony, does not support this verdict.  The
verdict undoubtedly was based upon passion or an improper attempt
to punish the Defendants.  Diana did not testify that he took any
additional time off because of the subject phone call.  There is no
evidence that defendants caused him objective medical harm.
Rather, the evidence he presented was in the form of his subjective
feelings. (Tr. #2, pp. 101-104)  That is the extent of the emotional
distress to which he testified and upon which the jury based its
verdict.  That evidence cannot support a verdict of $262,126 in
compensatory damages.

   The other indication that the jury's award was based on passion
or prejudice is the difference in the amounts awarded under the
alleged Fourth Amendment violations and the alleged Pa. Wiretap
Law violations.  The same damages testimony supported the alleged
Fourth Amendment violation and the Pa. Wiretap violation.  However,

the jury awarded more than twice as much compensatory damages under the Pa. Statutory claim, as compared to the Fourth Amendment claim. As there is no logical explanation for this, the verdict had to be the result of passion or prejudice.

In Evans v. Port Authority of New York and New Jersey, 273 F. 3d 346, 352 (3rd Cir. 2001), the Third Circuit held that the size of the jury award alone does not prove prejudice and passion. However, this Court must make certain that the jury award finds support in the record to ensure that the jury did not "abandon analysis for sympathy." Id. (quoting Gumbs v. Pueblo International, Inc., 823 F. 2d 768, 773 (3rd Cir. 1987). Here, it is not just the size of the award upon which the Defendants rely. It is the dearth of damage testimony, the misrepresentations of counsel at closing (*e.g.* comparing the defendants' defenses under the statutes to an affirmative defense in a murder case, such as self-defense or insanity and implying that their conduct amounted to a felony), the inconsistent amounts in the verdicts, all in combination with the $501,004 awarded, which show that the verdict resulted from passion or prejudice, warranting a new trial.

### III.  In the Alternative, the Defendants are Entitled to a Remittitur

Even if the Court does not agree that the verdict in favor of the plaintiff was the result of passion or prejudice, the damages award itself should be substantially reduced because it is not rationally based upon the evidence; the compensatory award under the federal act was assessed by the court against each defendant, rather than jointly; the court should have assessed damages under 18 Pa. C.S. § 5747, and improperly let the issue go to the jury; and there was no evidence of wantonness, recklessness, or maliciousness on the part of the defendants to justify a punitive award.

As discussed previously, Diana's testimony concerning his emotional distress or any other injuries is insubstantial.  Based on precedent in comparable cases, this testimony warrants only a small fraction of what was awarded by the jury, or nominal damages.

Even if the court fails to grant the JNOV, a remittitur may also be appropriate in this case because of the large damages award. Whether or not to grant a remittitur is within the sound discretion of the district court.  Spence v. Board of Education, 806 F.2d 1198, 1201 (3rd Cir. 1986).  Where no clear judicial error can be ascertained, but where the verdict is so large that it shocks the

conscience, the court should order the plaintiff to remit the amount exceeding an amount supported by the evidence, or in the alternative, grant a new trial.  <u>Kazan v. Wolinski</u>, 721 F.2d 911 (3d Cir. 1983).

In <u>Hall v. Pennyslvania</u>, 2006 WL 2772551 (M.D. Pa. 2006), an unlawful discrimination case, the plaintiff was awarded $1,000,000 in compensatory damages, which was reduced to $300,000 pursuant to statutory limitations. <u>Id</u>. at 20.   The Commonwealth requested a remittitur, which was granted, reducing the award to $75,000. <u>Id</u>. at 21.   Hall was subjected to greater emotional trauma from her employer than Tpr. Diana.  Hall was the recipient of a Christmas card from her co-workers that made a derogatory reference to the female anatomy; her co-workers also awarded her a certificate for being "an asshole", she was subjected to a pat down by a male officer in front of a supervisor who found the ordeal amusing; and a position that she had held in the past was changed to a male-only position when she expressed interest. <u>Id</u>. at 5.   Disciplinary oversight also became stricter following her filing of a complaint with the PHRC. <u>Id</u>.  She was harassed because another employee filled a car with gasoline while she attended to other matters, she was reported for refusing to

complete a form for an incident she did not personally witness, and she was investigated for submitting an incomplete form. Id.  The jury in Hall found a pattern of antagonistic behavior and the court upheld that judgment. Id.

Despite these insulting incidents, the court still granted the remittitur.  Id. at 21.  The evidence on damages presented by the plaintiff was that she began to doubt herself, and questioned whether the ordeal was worth the trouble. Id.  She testified she was a "grouch" and that the discrimination had taken a toll on her relationship with her husband.  Id.

Even though the court concluded that she had demonstrated a reasonable probability that emotional distress and pain and suffering had occurred, the court still granted a remittitur to a mere fraction of what the jury ordered.  Id. at 23.   In Hall's case, no other witnesses testified as to the impact on her relationship with family members, and she presented no evidence that the conduct necessitated psychological treatment. Id.  In addition, her employment evaluations remained satisfactory throughout the whole period. Id.

When Diana's case is contrasted with Hall's, the differences in the amount of "trauma" each was subjected to is striking.  Diana was

"subjected" to the recording of a business-related phone call, ordering him back to work.  The call lasted about 10 minutes.  Hall was subjected to months of abuse.  Unlike Hall, no-one mistreated Diana after the phone call – in fact, he was promoted to corporal in 2005, a few months after he returned to full duty.

In the Spence case, supra., 800 F. 2d 1198, the 3rd Circuit held that remittitur of a $25,000 compensatory damage award to $2,940 was appropriate in a First Amendment retaliation claim, when the only evidence of emotional distress consisted chiefly of plaintiff's own testimony that she was depressed and humiliated by a transfer and had lost her motive to be creative. Id., at 1201.   The plaintiff offered no evidence that she sought psychiatric counseling and it was uncontroverted that she suffered no loss of job or reduction in pay.

As in Spence, the plaintiff here did not establish a right to compensatory damages for emotional distress.  Diana testified that he was upset by the phone call, and lost sleep over it, and had some difficulties with his wife, but he never sought psychological counseling, nor did he consult a physician about any of his problems.  Moreover, like the plaintiff in Spence, no-one else supported his testimony that he suffered emotional distress.

As indicated earlier, an order requiring a remitittur rests within the sound discretion of this Court. Id.  The Court's role is to ensure that jury awards do not exceed all reasonable bounds.  Walters v. Mintec/International, 758 F.2d 73, 82 (3d Cir. 1985)  The Defendants submit that given the paucity of testimony that Diana actually suffered any injury as a result of the recording of the phone call between him and Oliphant, the maximum award the jury could reasonably have awarded him is nominal damages.    At the very least, the compensatory damages should be greatly reduced because Diana introduced no evidence of physical suffering or anything that caused him to seek professional medical or psychological help.   Moreover, no-one else confirmed that he had suffered any injury.  See Bolden v. SEPTA, 21 F. 3d 29, 33-34 (3d Cir. 1994) (four witnesses, including the plaintiff's wife and daughter, testified how the plaintiff had changed as a result of defendant's actions)

The court should also order a remittutur with respect to the compensatory damages assessed in the federal wiretapping statutory claim, since the Court improperly awarded statutory damages individually against each plaintiff, when the statutory language and purpose of 18 U.S.C. § 2520 is that damages should be awarded

jointly among all defendants.  In the circuit and district courts that have dealt with this issue, all have agreed that to award statutory damages against each defendant individually would be inconsistent with the language and purpose of § 2520.  Jacobsen v. Rose, 592 F.2d 515 (9th Cir. 1978), Biton v. Menda, 812 F. Supp. 283 (D.P.R. 1993), Farberware, Inc. v. Grobe, 1995 U.S. District LEXIS 15409 (S.D.N.Y. 1995)

The circuit court in Jacobsen noted that there was a common understanding that the statutory damages under § 2520 were intended to reimburse a plaintiff for his losses and not to provide a windfall against multiple defendants.  Jacobsen, 592 F. 2d at 520. Based on the holding in Jacobsen and the other cited cases the defendants believe the statutory damages under § 2520 should not exceed the damages assessed against one of the defendants, $10,000.  Therefore, the statutory damages under the federal act should be reduced to $10,000.

The language of 18 Pa. C.S. § 5747 (c) mirrors the language of 18 U.S.C. § 2520 (c)(2) in that both statutes indicate that the court assesses damages, rather than the jury, for violations of the act.  In this case, the court improperly allowed the jury to decide damages

under the Pa. Wiretap Law.  Therefore, the court should negate the jury award for compensatory damages under the Pa. Wiretap Law and reduce it to 0, in that it has already assessed the actual damages suffered by Diana under the federal act, and to award the amount twice would be duplicative and amount to a windfall for the plaintiff. See DIRECTV v. Walsh, 540 F. Supp. 2d 553 (M.D. Pa. 2008) (The court did not award damages under § 2520 (c)(2) because damages were awarded under another statute.)

Moreover, the Pa. Wiretap Law does not provide for an award of punitive damages.   18 Pa. C.S. § 5747, (b) and (c) provides as follows:

> (b) **Relief.** – In a civil action under this section, appropriate relief includes:
>    (1) such preliminary and other equitable or declaratory   relief as may be appropriate;
>    (2) damages under subsection (c); and
>    (3) reasonable attorney fees and other litigation costs reasonably incurred.
> (c) **Damages.** – The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violater as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000.

Since there is no provision in Pennsylvania law for an award of punitive damages for a violation of the Pa. wiretapping law, the jury award on this matter should be negated.

Finally, with respect to the punitive damages assessed in this case, there is no evidence in the record to support a punitive damages award on any basis. The defendants acted in reliance on exceptions to the federal and state wiretapping statutes, each believed they were acting in the ordinary course of police duties, and each believed the business call made to Tpr. Diana on a recorded line was for administrative purposes, and there were beeps on the line. In order to receive punitive damages under § 2520, Diana must show that defendants acted wantonly, recklessly, or maliciously. Halperin v. Kissinger, 434 F. Supp. 1193, 1195 (D.D.C. 1977). See Scott v. Donald, 165 U.S. 58, 86-89 (1897). There has been no showing of the callousness required for an award of punitive damages. Therefore, the defendants request that the court eliminate the punitive award.

For the reasons stated above the plaintiff should accept a remitted award of no larger than $10,000. If he does not accept that, a new trial should be granted.

## **CONCLUSION**

For all the reasons given above, the Defendants are entitled to judgment as a matter of law, on the claims for which the jury found in favor of Diana.  In the alternative a new trial is warranted for the reasons outlined herein.  In the alternative, the damages should be remitted.

Respectfully submitted,


s/Joanna N. Reynolds_____
Joanna N. Reynolds
Assistant Counsel
Pennsylvania State Police
1800 Elmerton Avenue
Harrisburg, PA  17110
Attorney ID #37436
(717) 783-5568


Dated:  7/25/08

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIO J. DIANA,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:05-CV-2338** |
| **V.** | : | |
| | : | **(JUDGE CAPUTO)** |
| **WILLARD OLIPHANT AND** | : | |
| **CARMEN ALTAVILLA** | : | **Electronically Filed** |
| **Defendants** | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, **Joanna N. Reynolds**, Assistant Counsel for the Pennsylvania State Police, hereby certify that on this date I caused to be served a copy of the foregoing, **Brief in Support of Defendants' Motion Pursuant to Fed. R. Civ. P. 50 (b) for Judgment as a Matter of Law or, Alternatively, for a New Trial pursuant to Fed. R. Civ. P. 59 (a), or for a Remittitur** by filing a copy electronically with the United States District Court for the Middle District of Pennsylvania.  Upon filing, a copy is electronically served by the Case Filing System upon:

> **Don Bailey, Esquire**
> **and**
> **Douglas Goldhaber, Esquire**
> **Law Offices of Don Bailey**
> **4311 N. 6th Street**
> **Harrisburg, PA  17110**
> **(Counsel for Plaintiff)**

> **s/ Joanna N. Reynolds**
> **JOANNA N. REYNOLDS**
> **Assistant Counsel**

**DATE:  7/25/2008**